**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| BRIAN RUBY, Individually, and on Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 8:19-cv-02922-T-MSS-AEP |
| v. | ) |
| UNITED SERVICES AUTOMOBILE ASSOCIATION and CCC INFORMATION SERVICES, INC., | ) |
| Defendants. | ) |

**CCC INFORMATION SERVICES, INC.'S MOTION TO COMPEL APPRAISAL AND
TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II. PLAINTIFF'S CONTRACT WITH USAA REQUIRES THAT THIS DISPUTE
    BE SUBMITTED TO APPRAISAL ......................................................................2

    A.  Plaintiff Agreed To Submit His Dispute To Appraisal............................................3
    B.  CCC Is Entitled To Compel Appraisal ...................................................................8
        1.  Plaintiff's Claims Against CCC Presume The Existence Of The
            Policy ..........................................................................................................8
        2.  Plaintiff Alleges Concerted Misconduct By CCC And USAA .................10

III. CONCLUSION....................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
  No. 10-61984-CIV, 2011 WL 2470344 (S.D. Fla. June 21, 2011)...........................................3

*Armas v. Prudential Sec., Inc.*,
  842 So.2d 210 (Fla. Dist. Ct. App. 2003) ................................................................................8, 10

*Bettor v. Esurance Prop. & Cas. Ins. Co.*,
  No. 18-61860-CIV-MORENO/SELTZER, 2019 WL 2245564 (S.D. Fla. Mar.
  28, 2019) ..................................................................................................................................2, 5, 10

*Bettor v. Esurance Prop. & Cas. Ins. Co.*,
  No. 18-61860-CIV-MORENO/SELTZER, 2019 WL 3408900 (S.D. Fla. June
  17, 2019) ..................................................................................................................................2, 5, 10

*Bloomgarden v. Allstate Fire & Cas. Ins. Co.*,
  No. 18-62059-CIV-GAYLES/SELTZER, 2019 WL 2245475 (S.D. Fla. Mar.
  15, 2019) ..................................................................................................................................2, 5, 10

*Bloomgarden v. Allstate Fire & Cas. Ins. Co.*,
  No. 18-62059-CIV-GAYLES/SELTZER, 2019 WL 5209015 (S.D. Fla. Aug.
  6, 2019) ....................................................................................................................................2, 5, 10

*CenTrust Bank, N.A. v. Montpelier U.S. Ins. Co.*,
  No. 12-cv-9233, 2013 WL 1855838 (N.D. Ill. May 1, 2013).....................................................3

*Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*,
  162 So.3d 140 (Fla. Dist. Ct. App. 2014) ...................................................................................4

*Fla. Ins. Guar. Ass'n, Inc. v. Castilla*,
  18 So.3d 703 (Fla. Dist. Ct. App. 2009) ......................................................................................3, 6

*Fla. Ins. Guar. Ass'n, Inc. v. Martucci*,
  152 So.3d 759 (Fla. Dist. Ct. App. 2014) ...................................................................................6

*Gonzalez v. State Farm Fire & Cas. Co.*,
  805 So.2d 814 (Fla. Dist. Ct. App. 2000) ...................................................................................6

*Gunson v. BMO Harris Bank, N.A.*,
  43 F. Supp. 3d 1396 (S.D. Fla. 2014) ........................................................................................8, 9, 10, 11

*J&E Invs., LLC v. Scottsdale Ins. Co.*,
  No. 16-61688-CIV-DIMITROULEAS/Snow, 2016 WL 8793337 (S.D. Fla.
  Aug. 18, 2016) ..................................................................................................................6, 7

*J&E Invs., LLC v. Scottsdale Ins. Co.*,
  No. 16-61688-CIV-DIMITROULEAS/Snow, 2016 WL 8793338 (S.D. Fla.
  Sept. 7, 2016) .........................................................................................................................6

*Koechli v. BIP Int'l, Inc.*,
  870 So. 2d 940 (Fla. Dist. Ct. App. 2004) ...........................................................................10

*Kolsky v. Jackson Square*, *LLC*,
  28 So.3d 965 (Fla. Dist. Ct. App. 2010) ..........................................................................3, 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................................................11

*Magaldi v. Safeco Ins. Co. of Am.*,
  No. 07-80618-CIV-HURLEY, 2008 WL 11333536 (S.D. Fla. Jan. 4, 2008) ........................11

*McPhillips v. Scottsdale Ins. Co.*,
  No. 2:18-cv-421-FtM-99CM, 2018 WL 3805865 (M.D. Fla. Aug. 10, 2018) ....................6, 7

*Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co.*,
  824 So.2d 288 (Fla. Dist. Dt. App. 2002) ..............................................................................8

*Moore v. Travelers*,
  321 F. App'x 911 (11th Cir. 2009), *reh'g & reh'g en banc denied*, 347 F.
  App'x. 555 (11th Cir. 2009) ....................................................................................................4

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir. 1999) .................................................................................................8

*Pando v. U.S. Fid. & Guar. Co.*,
  No. 97-2987-CIV, 1998 WL 708619 (S.D. Fla. June 29, 1998), *aff'd*, 198 F.3d
  262 (11th Cir. 1999) ................................................................................................................3

*Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*,
  414 F. App'x 240 (11th Cir. 2011) ..........................................................................................8

*Picard v. Credit Sols., Inc.*,
  564 F.3d 1249 (11th Cir. 2009) ...............................................................................................7

*Preferred Mut. Ins. Co. v. Martinez*,
  643 So.2d 1101 (Fla. Dist. Ct. App. 1994) .............................................................................3

*State Farm Fire & Cas. Co. v. Middleton*,
  648 So. 2d 1200 (Fla. Dist. Ct. App. 1995) ............................................................................7

*Sunshine Windows Mfg., Inc. v. Zurich Am. Ins. Co.*,
   No. 06-21299-CIV-UNGARO-BENAGES, 2006 WL 8433797 (S.D. Fla. Dec.
   6, 2006) ........................................................................................................................8

**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................11

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1

Fed. R. Civ. P. 19(a)(1)................................................................................................................11

Defendant CCC Information Services, Inc. ("CCC") respectfully joins the Motion to Compel Appraisal and Dismiss the Complaint ("Appraisal Motion") of United Services Automobile Association ("USAA"), and moves to compel appraisal of the claims of Plaintiff Brian Ruby ("Plaintiff") against CCC contained in Plaintiff's Class Action Complaint (Dkt. 1) ("Complaint" or "Compl.") and to dismiss or stay this action pending appraisal. In the alternative, CCC respectfully moves to dismiss the claims against CCC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

In support of this motion, CCC states as follows:

## I.     INTRODUCTION

Plaintiff was involved in an automobile accident with a third party, the damage from which was covered by his insurance policy with USAA. Compl. ¶¶ 15–17. Upon receiving Plaintiff's claim pursuant to that policy, USAA declared his vehicle a total loss and used a market valuation report ("MVR") provided to USAA by CCC to determine the "actual cash value" of Plaintiff's pre-accident vehicle. *Id.* ¶¶ 17–18, 20–21. CCC's valuation of Plaintiff's vehicle at $13,295 reflected CCC's "opinion as to the value of the loss vehicle, based on information provided to CCC by" USAA. Compl. Ex. B (Dkt. 1-2), at 1. USAA paid Plaintiff this amount for his vehicle. Compl. ¶ 21. Until filing this litigation, Plaintiff never questioned—much less disputed—with USAA the appraised vehicle amount. *See id.* ¶¶ 21, 63–77 (generic allegations about purported conduct by USAA). Plaintiff now alleges that the MVR undervalued his vehicle and that he did not receive the full value to which he was entitled. *Id.* ¶¶ 21, 54.

Plaintiff's insurance policy with USAA (the "Policy") (Compl. Ex. B, Dkt. 1-2), however, requires him to submit this dispute to appraisal if the Policy's appraisal provision is triggered, and thus, Plaintiff's claims against both USAA and CCC are premature. The language in Plaintiff's insurance policy is unambiguous that appraisal is mandatory once a party invokes the appraisal

1

provision. Plaintiff's attempt to avoid appraisal by making conclusory allegations about waiver is baseless. All of Plaintiff's claims against CCC arise out of his Policy and are directly related to his claims against USAA. The Court should compel Plaintiff's dispute to appraisal and dismiss this action. *See, e.g.*, *Bettor v. Esurance Prop. & Cas. Ins. Co.*, No. 18-61860-CIV-MORENO/SELTZER, 2019 WL 2245564 (S.D. Fla. Mar. 28, 2019) (Selter, M.J.) ("*Bettor I*"), *report and recommendation adopted by* 2019 WL 3408900 (S.D. Fla. June 17, 2019) ("*Bettor II*") (dismissing claims relating to CCC's total loss valuation based on an appraisal provision in an Esurance policy); *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059-CIV-GAYLES/SELTZER, 2019 WL 2245475 (S.D. Fla. Mar. 15, 2019) (Seltzer, M.J.), *report and recommendation adopted and affirmed in part by* 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019) (dismissing claims relating to CCC's total loss valuation based on an appraisal provision in an Allstate policy).

## II. PLAINTIFF'S CONTRACT WITH USAA REQUIRES THAT THIS DISPUTE BE SUBMITTED TO APPRAISAL

All of Plaintiff's claims against CCC allege that it engaged in conduct that denied Plaintiff the actual cash value of his total-loss vehicle as required by the Policy between USAA and Plaintiff.[1] *See, e.g.*, Compl. ¶¶ 3–6, 19, 22, 32–38, 44–46, 51–54, 85(c)–85(g), 86, 107–08, 111–17, 122, 126–28. But as explained in USAA's Appraisal Motion Plaintiff's policy with USAA contains an appraisal provision that grants either party the right to demand a mandatory appraisal when the "amount of loss" is in dispute:

> If we and you do not agree on the amount of loss, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If

---

[1] Pursuant to the Policy, the "actual cash value" of a covered vehicle is defined as "the amount that it would cost, at the time, of loss to buy a comparable vehicle." Compl. ¶ 16.

2

> they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

Policy, at 25. USAA has demanded an appraisal pursuant to that provision, and thus, as the parties' contract requires, the amount of loss must be decided through appraisal. Although CCC is a third-party to the Policy, CCC also may enforce the appraisal provision under the equitable estoppel doctrine. *See* disc. *infra* at II.B.

### A. Plaintiff Agreed To Submit His Dispute To Appraisal

Plaintiff's dispute with USAA is subject to the appraisal provision in the Policy, which has not been waived. In ruling on a motion to compel appraisal, the Court must consider whether a valid appraisal provision exists, whether the subject matter of the claims falls under that appraisal provision, and whether the right to appraisal has been waived.[2] *Kolsky v. Jackson Square, LLC*, 28 So.3d 965, 968 (Fla. Dist. Ct. App. 2010); *Preferred Mut. Ins. Co. v. Martinez*, 643 So.2d 1101, 1102–03 (Fla. Dist. Ct. App. 1994); *Pando v. U.S. Fid. & Guar. Co.*, No. 97-2987-CIV, 1998 WL 708619, at *2 (S.D. Fla. June 29, 1998), *aff'd*, 198 F.3d 262 (11th Cir. 1999).[3] "Motions to compel [appraisal] should be granted whenever the parties have agreed to [appraisal] and the court entertains no doubts that such an agreement was made." *Castilla*, 18 So.3d at 705.

---

[2] Under the Federal Arbitration Act and in Florida, appraisal provisions are routinely treated as arbitration provisions and enforced in the same manner. *See, e.g.*, *200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-61984-CIV, 2011 WL 2470344, at *12 (S.D. Fla. June 21, 2011) ("[a]ppraisal provisions in insurance policies … have generally been treated as arbitration provisions"); *Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So.3d 703, 704 (Fla. Dist. Ct. App. 2009) ("*Castilla*") (establishing same); *see also, e.g.*, *CenTrust Bank, N.A. v. Montpelier U.S. Ins. Co.*, No. 12-cv-9233, 2013 WL 1855838, at *2 (N.D. Ill. May 1, 2013) ("[A]n appraisal clause is analogous to an arbitration clause and is enforceable in a court of law in the same manner as an arbitration clause.").

[3] Unless stated otherwise, all internal citations, quotations, and alteration marks are omitted throughout.

3

Plaintiff cannot seriously dispute that the first two factors have been satisfied. He admits that the Policy "constitutes a valid and binding contract."[4] Compl. ¶ 106. And the Policy contains an appraisal provision that states that "[i]f [USAA] and [Plaintiff] do not agree on the amount of loss, either may demand an appraisal." Policy, at 25. Once an appraisal is demanded, it becomes mandatory (*e.g.*, "each party *will* select an umpire" (emphasis added)), and the appraisal decision "will be binding." *Id.*; *see also Moore v. Travelers*, 321 F. App'x 911, 913 & n.3 (11th Cir. 2009) (addressing enforceability of a similar appraisal provision and finding that although neither the insurer nor the insured was required to invoke the process, once a party did so, the appraisal was mandatory because the Policy stated that appraisal "shall then set the amount of loss"), *reh'g & reh'g en banc denied*, 347 F. App'x. 555 (11th Cir. 2009). The Policy further provides that "[n]o legal action may be brought against [USAA] until there has been full compliance with all the terms of this policy," including the appraisal provision. Policy, at 28. Thus, a valid appraisal provision exists in this case.

The subject matter of Plaintiff's claims also falls directly within the scope of the appraisal provision. The provision broadly covers disputes over "the amount of loss" covered by the Policy (Policy, at 25), and Plaintiff's entire case is based on his assertion that USAA failed to pay him the "amount of loss" that he believes he was owed under the Policy. Moreover, every allegation of harm by CCC to Plaintiff relates to the "amount of loss" that USAA allegedly owes him. *See, e.g.*, Compl. ¶¶ 3–6, 19, 22, 32–38, 44–46, 51–54, 85(c)–85(g), 86, 107–08, 111–17, 122, 126–28; *see also Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So.3d 140, 143 (Fla. Dist. Ct. App. 2014) ("[W]hen the insurer admits that there *is* a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal.").

---

[4] Plaintiff does not allege that the appraisal provision is invalid, either.

4

Two courts in the Eleventh Circuit recently have compelled to appraisal claims involving the same CCC product and similar appraisal provisions after concluding that the subject matter of the plaintiffs' claims fell within the scope of the appraisal provisions. In *Bettor I*, the plaintiff brought claims for declaratory judgment and breach of contract based on allegations that "Esurance calculated the amount of" the total loss vehicle's cash value using an allegedly unauthorized database created for the insurance industry rather than from another source and made improper deductions to the vehicle's actual cash value. 2019 WL 2245564, at *1. The court rejected the plaintiff's argument that the allegations "involve[] more than a dispute as to the amount paid by Esurance," reasoning that the plaintiff wanted a readjustment of its claim "based on a proper methodology permitted under Florida law" and monetary damages based on the condition adjustment applied to its total loss vehicle, thus rendering the case "about the amount of money owed to Bettor following an unsatisfactory claim adjustment." *Id.* at *2–3; *accord Bettor II*, 2019 WL 3408900, at *1 (adopting report and recommendation). Similarly, in *Bloomgarden*, the plaintiff sued Allstate alleging that its use of the so-called "CCC method" to compute the value of his total loss vehicle "is not a generally recognized motor vehicle industry source" and violated Florida law. 2019 WL 2245475, at *1. The court held that the plaintiff's declaratory judgment claims related to the legality of the use of CCC's product to determine actual cash value and were focused on "the amount of money owed to Bloomgarden following an unsatisfactory claim adjustment," and therefore, the appraisal provision applied.[5] *Id.* at *3–4. Like the claims in *Bettor* and *Bloomgarden*, Plaintiff's claims here for tortious interference with contract, breach of contract, and civil conspiracy all are focused on a dispute over the amount of money USAA owes to Plaintiff

---

[5] The plaintiff's breach of contract claim involved a separate dispute between the parties related to salvage values and was dismissed on separate grounds. *See Bettor II*, 2019 WL 5209015, at *1.

5

for his total loss vehicle. Accordingly, the subject matter of Plaintiff's claims also falls directly within the scope of the binding appraisal provision for the "amount of loss" covered by the Policy.

Finally, neither USAA nor CCC has waived its right to appraisal. "A waiver of the right to appraisal occurs when a party actively participates in a lawsuit or engages in conduct inconsistent with the right to appraisal." *McPhillips v. Scottsdale Ins. Co.*, No. 2:18-cv-421-FtM-99CM, 2018 WL 3805865, at *2 (M.D. Fla. Aug. 10, 2018) (finding no waiver); *Fla. Ins. Guar. Ass'n, Inc. v. Martucci*, 152 So.3d 759, 761 (Fla. Dist. Ct. App. 2014) (finding no waiver). "[T]he question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether [the insurer] acted inconsistently with [its] appraisal rights." *J&E Invs., LLC v. Scottsdale Ins. Co.*, No. 16-61688-CIV-DIMITROULEAS/Snow, 2016 WL 8793337, at *2 (S.D. Fla. Aug. 18, 2016), *report and recommendation adopted by* 2016 WL 8793338 (S.D. Fla. Sept. 7, 2016). "The totality of the circumstances should be considered." *Id.*

Plaintiff has not met the stringent standard for waiver in this case. First, because this motion is CCC's first response to the Complaint—which was when CCC first learned of Plaintiff's dispute with USAA's payment—CCC has not substantially invoked the litigation process for purposes of waiver. *See Castilla*, 18 So.3d at 703–05 (explaining appraisal provision may be invoked for first time after litigation has commenced and concluding that party did not act inconsistently with right to appraisal by participating in suit); *Gonzalez v. State Farm Fire & Cas. Co.*, 805 So.2d 814, 818 (Fla. Dist. Ct. App. 2000) (finding no waiver where motion to compel appraisal was made within thirty days of filing lawsuit); *see also J&E Invs.*, 2016 WL 8793337, at *3 ("Where as here, a defendant's first substantive action in the case is to challenge the plaintiff's right to a judicial remedy, as opposed to attacking the case on the merits, courts have found that

6

the defendant has not waived its right to compel appraisal.").[6]

Further, for similar reasons, Plaintiff cannot show CCC's conduct in defending this lawsuit and filing the instant motion is inconsistent with the right to appraisal. *See J&E Invs.*, 2016 WL 8793337, at *3 (finding no waiver even though defendant did not immediately demand appraisal, because it had not participated in case other than to file the motion challenging plaintiff's attempt to obtain a judicial resolution of the dispute). CCC has done nothing in this case except respond to the Complaint with the instant motion. It has not sought discovery nor taken any other steps inconsistent with its position that Plaintiff's dispute with USAA should be decided by appraisal.

Finally, CCC's request to compel appraisal is consistent with the "general, even overwhelming, preference in Florida for the resolution of conflicts through any extra-judicial means," including appraisals. *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201–02 (Fla. Dist. Ct. App. 1995). The Federal Arbitration Act likewise establishes a strong federal policy in favor of arbitration. *Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009). Additionally, nothing in the Policy requires that a party demand appraisal within a particular time after the initial valuation of the loss vehicle—particularly by parties that had no notice that Plaintiff disputed USAA's settlement of his claim. *See* Policy, at 25. And because USAA does not dispute that the loss is covered by the Policy and has triggered the appraisal provision, appraisal is mandated by the Policy. *Accord McPhillips*, 2018 WL 3805865, at *3 (staying case pending appraisal because of dispute about amount of liability not coverage).

Accordingly, the Court should compel appraisal and dismiss or stay Plaintiff's claims pending appraisal. *See, e.g.*, *Sunshine Windows Mfg., Inc. v. Zurich Am. Ins. Co.*, No. 06-21299-

---

[6] The same notice issue appears true for USAA. Plaintiff has not alleged that USAA had *any* notice that Plaintiff disputed the valuation of his vehicle prior to when he filed the Complaint. *See, e.g.*, Compl. ¶¶ 63–77.

CIV-UNGARO-BENAGES, 2006 WL 8433797, at *4 (S.D. Fla. Dec. 6, 2006) (concluding that Florida law permits staying litigation pending completion of appraisal).[7]

### B. CCC Is Entitled To Compel Appraisal

Although a non-signatory to the Policy, CCC has the right to compel appraisal of Plaintiff's claims based on the doctrine of equitable estoppel. *See*, *e.g.*, *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1400–01 (S.D. Fla. 2014); *Armas v. Prudential Sec., Inc.,* 842 So.2d 210, 212 (Fla. Dist. Ct. App. 2003) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)). Equitable estoppel permits a non-signatory to enforce an appraisal provision in a contract against a signatory if *either* (1) "the signatory's claims against a non-signatory make reference to or presume the existence of a written agreement" *or* (2) the signatory "raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract." *Armas*, 842 So.2d at 212. Both prongs of Florida's equitable estoppel doctrine apply here. *See* disc. *infra* at II.B.1–2.

#### 1. Plaintiff's Claims Against CCC Presume The Existence Of The Policy

All of Plaintiff's claims against CCC "make reference to or presume the existence of" the Policy. *Armas*, 842 So.2d at 212; *see also Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011). Plaintiff's case hinges on his assertion that he was entitled to the actual cash value of his vehicle under the Policy and that USAA instead relied on CCC's purportedly improper MVRs to undervalue Plaintiff's vehicle, thereby breaching

---

[7] As the *Sunshine* court explained, "Under Florida law, when an order for arbitration is entered, the cause should be stayed," and this principle applies to appraisal provisions. 2006 WL 8433797, at *4 (citing cases); *see also Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co.*, 824 So.2d 288, 290 (Fla. Dist. Dt. App. 2002) ("Any action or proceeding involving an issue subject to arbitration should be stayed if an application thereof has been made."). Thus, it is appropriate to stay this litigation pending completion of the appraisal.

8

the Policy. *See*, *e.g.*, Compl. ¶¶ 3–6, 19, 22, 32–38, 44–46, 51–54, 85(c)–85(g), 86, 107–08, 111–17, 122, 126–28. Plaintiff alleges, for example, that the Policy "requires USAA to pay [Plaintiff] the 'actual cash value' of the [total loss] vehicle" *id.* ¶ 19 (quoting Policy, at 21; Amendatory Endorsement, at 3, Part D, Physical Damage Coverage, Limit of Liability), but that USAA and CCC have acted "to pay first party insureds less than the actual pre-loss value of total loss vehicles." *id.* ¶ 4. Thus, Plaintiff has invoked the Policy as the basis for his claims to relief, and evaluating his claims depends on determining the value to which he is entitled under the Policy.[8] *See* Policy, at 28 (Legal Action Against Us)

Additionally, each individual count against CCC references or presumes the existence of the Policy. Plaintiff's tortious interference claim, for example, asserts that "[t]he Policy obligated USAA to properly investigate the value of Plaintiff's total loss claims" and that CCC instead "enable[ed] USAA to underpay the claims of total loss insureds." Compl. ¶¶ 111, 115. The breach of contract claim alleges that the contract between CCC and USAA was intended "to outsource USAA's valuation of total loss claims for the purpose of satisfying the obligation of Allstate to value and pay total loss claims" under the Policy. *Id.* ¶ 120. And the conspiracy claim alleges that "USAA and CCC conspired to underpay Plaintiff and the Class by using CCC Valuations." *Id.* ¶ 126. Of course, whether an underpayment occurred can only be determined by evaluating the amount to which Plaintiff was entitled under the Policy and whether USAA breached the Policy. Thus, the Court should compel all of Plaintiff's claims against CCC to appraisal. *See Gunson*, 43 F. Supp. 3d at 1402 (compelling arbitration where plaintiffs' claims "rely upon and are necessarily related to" contract); *Armas*, 842 So.2d at 212 (compelling arbitration because plaintiff's claims

---

[8] Because Plaintiff defines the putative class as those who have made a first-party total-loss claim "under an automobile insurance policy issued within the state of Florida by USAA," the claims on behalf of the putative class likewise presume the existence of the Policy. *See* Compl. ¶ 78.

9

against non-signatory were "based on the underlying contractual obligation" between signatories).

Further, Florida courts have applied equitable estoppel to compel arbitration of claims against a non-signatory where those claims rested on "substantially the same facts" as claims against the signatory. *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 945 (Fla. Dist. Ct. App. 2004). Plaintiff's claims against USAA and CCC clearly rest on "substantially the same [alleged] facts," namely, that USAA used allegedly inaccurate CCC MVRs to settle the total-loss claims of insureds. *See, e.g.*, Compl. ¶ 51 ("The great majority of USAA total loss claims in Florida are, in fact, settled on the basis of the CCC Reports."); *see also id.* ¶¶ –6, 19, 22, 32–38, 44–46, 51–54, 85(c)–85(g), 86, 107–08, 111–17, 122, 126–28. Indeed, Plaintiff levies the same factual allegations against CCC and USAA and incorporates those into his causes of action against each defendant. *See* Compl. ¶¶ 1–104, 105, 110, 119, 125. And USAA is entitled to compel appraisal as a signatory to the Policy. *See* USAA's Appraisal Motion at *passim; Bettor I* and *Bettor II*; *Bloomgarden I* and *Bloomgarden II*. The Court accordingly should grant CCC's motion to compel appraisal for this reason, as well. *See Koechli*, 870 So.2d at 945.

### 2. Plaintiff Alleges Concerted Misconduct By CCC And USAA

Equitable estoppel independently requires appraisal of Plaintiff's claims against CCC because Plaintiff alleges that CCC and USAA engaged in concerted misconduct. *See Gunson,* 43 F. Supp. 3d at 1402–03 (finding that allegations that defendants participated in scheme to collect unlawful debts, were co-conspirators, and worked on behalf of other entities violating law were "sufficient to establish concerted misconduct"); *Kolsky*, 28 So.3d at 969–70 (equitable estoppel applied where "complaint alleges a conspiracy among the signatory appellant . . . and the non-signatory appellants."). Plaintiff alleges that CCC and USAA schemed and conspired to deny Plaintiff the actual cash value of his vehicle as the Policy required. *See, e.g.*, Compl. ¶¶ 4 ("USAA and CCC have engaged in a scheme to artificially deflate the value of total loss claims"), 53

(alleging "[USAA's] pre-existing conspiracy with CCC to intentionally undervalue total loss claims"), 115 (alleging that CCC provided USAA inaccurate MVRs "for the specific purpose of enabling USAA to underpay the claims of total loss insureds")). These allegations of concerted misconduct are incorporated into all of Plaintiff's claims against CCC (*see id.* ¶¶ 110, 119, 125), and they form the basis of Plaintiff's conspiracy claim against USAA and CCC. *See, e.g.*, *id.* ¶¶ 125–29. The Court should apply equitable estoppel to compel Plaintiff's claims to appraisal for this reason, as well. *See*, *e.g.*, *Gunson,* 43 F. Supp. 3d at 1402–03.[9]

## III. CONCLUSION

CCC respectfully requests that the Court compel Plaintiff's dispute against CCC to appraisal and dismiss or stay this action, and such additional relief as the Court deems just.

Date: January 21, 2020

Respectfully submitted,

*/s/ Marguerite M. Sullivan*

Marguerite M. Sullivan (*pro hac vice*)
marguerite.sullivan@lw.com
Jason R. Burt (*pro hac vice*)
jason.burt@lw.com
George C. Chipev (*pro hac vice*)
george.chipev@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

---

[9] Should the Court compel the claims against USAA to appraisal but decline to compel the claims against CCC to appraisal, the Court should stay the claims against CCC pending appraisal of the claims against USAA based on a lack of standing (Fed. R. Civ. P. 12(b)(1)); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), because USAA is an indispensable party (*see* Fed. R. Civ. P. 19(a)(1)), and/or given the Court's inherent powers to conserve resources and promote efficiency, *Magaldi v. Safeco Ins. Co. of Am.*, No. 07-80618-CIV-HURLEY, 2008 WL 11333536, at *1 (S.D. Fla. Jan. 4, 2008). CCC reserves the right to move for a stay in that scenario.

                Joseph H. Varner, III
                Florida Bar No. 394904
                HOLLAND & KNIGHT LLP
                P O Box 1288
                Tampa FL 33601-1288
                Telephone: 813-227-8500 / Fax: 813-229-0134
                joe.varner@hklaw.com
                Secondary:  gloria.mcknight@hklaw.com

*Attorneys for CCC Information Services, Inc.*

**CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 3.01(g)**

I HEREBY CERTIFY that on January 17, 2020, George Chipev, counsel for Defendant CCC Information Services Inc., contacted Jay Waller, counsel for Plaintiff Brian Ruby via telephone. CCC's counsel informed Plaintiff's counsel that CCC would be moving to (1) dismiss Plaintiff's complaint or, in the alternative, to compel Plaintiff to proceed with appraisal and stay this action pending the outcome of the appraisal; and (2) stay discovery pending the resolution CCC's appraisal motion or if appraisal is granted. Plaintiff's counsel did not consent to CCC's requested relief.

*/s/ Marguerite M. Sullivan*

Marguerite M. Sullivan

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all counsel of record.

*/s/ Marguerite M. Sullivan*
Attorney for Defendant CCC Information Services, Inc.,